Max Alexander SOFFAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 68907.

Court of Criminal Appeals of Texas, En Banc.

Sept. 23, 1987.

Donald W. Rogers, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & James C. Brough, Andy Tobias & John Holleman, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

## OPINION

TEAGUE, Judge.

Max Alexander Soffar, hereinafter referred to as appellant, was convicted by a jury of committing the murder of Arden Alane Felsher while in the course of committing or attempting to commit the robbery of Stephen Allen Sims, which elevated

the offense of murder to the offense of capital murder, see V.T.C.A., Penal Code, § 19.03. After the jury answered the special issues that were submitted to it pursuant to the provisions of Article 37.071, V.A. C.C.P., in the affirmative, the trial judge assessed appellant's punishment at death.

We affirm.

Appellant presents for review in his brief that was filed on July 24, 1984, which has not been amended or supplemented since that date, four grounds of error, to-wit: (1) "The evidence is insufficient to support the conviction"; (2) "The Trial Court committed reversible error by allowing testimony concerning an extraneous offense to be admitted before the jury at the guilt stage of the trial over Appellant's objection when probable cause for the Appellant's arrest was not an issue for the jury's determination"; (3) "The Trial Court committed reversible error by refusing to give a limiting instruction to the jury at the guilt phase of the trial on the law with regard to use of evidence reflecting prior inconsistent statements of witnesses admitted for the purpose of impeachment only"; and (4) "The Trial Court erroneously excluded prospective juror Dorothy L. Cone (R. XX–2981–3023) over the exception of the Appellant (R. XXII–2033) in violation of the doctrine announced in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)." Finding that none of appellant's grounds of error warrant a finding by this Court that reversible error was committed by the trial judge, each will be expressly overruled.

Appellant urges in his first ground of error that the evidence is insufficient to sustain the jury's verdict finding him guilty of capital murder. We disagree.

The evidence reflects that on the night of July 13, 1980, at the Fairlane-Windfern Bowling Alley, located at 14441 Northwest Freeway in Houston, during the course of the commission of a robbery, in which approximately $1,000 was taken, two young persons, Stephen Allen Sims and Tommy Temple, who worked at the bowling alley, and Arden Alane Felsher, another young person, but a non-employee, were murdered. Gregory Garner, another young employee, was shot in the left side of the head above and in front of his left ear, but survived. Garner, however, did not testify at appellant's trial nor was his absence accounted for by the prosecution.[1]

The evidence also reflects that appellant gave the police three written statements. The prosecution only had the third one formally admitted into evidence.

Appellant's third statement reflects the following:

My name is Max Soffar. I have been in jail since Tuesday morning for this bowling alley deal. I gave two previous statements, one to detective Schultz and one to detective Ladd. I didn't tell the whole truth in those statements and want to now so that I don't take this whole thing by myself.

One thing that I didn't tell the truth was that Lat Bloomfield and I did this thing when we first got to the bowling alley, not like I said about being there in the parking lot for awhile. Lat drove in and we were in his brown thunderbird. Lat pulled right to the front door so that the passenger side was next to the bowling alley. I think that there was a couple of cars in the parking lot when Lat pulled to the door. Lat pulled a stocking over his hair so that his hair would be pulled back. I pulled up my t-shirt over my nose and mouth. *Lat had his 357 revolver which I think is an R–G model.*

---

1. The record reflects that the bullet that entered Garner's head .exited just below his left eye, which was later removed through surgery. The record reflects that after the shooting Garner managed to telephone his mother and told her he had been shot and needed help. As a result of this telephone call, police and medical assistance arrived at the bowling alley. The victims' bodies were found laid out in parallel fashion next to each other. Dr. Philip Leon Gildonburg testified that he performed surgery on Gregory's head the next morning, removing therefrom bone fragments. Gildonburg also testified that Garner could have suffered retrogressive amnesia as a result of the concussion caused by the bullet wound to his head. Amazingly, the State presented no direct testimony or evidence at appellant's trial that would have accounted for Garner's absence at the trial.

This gun had about a three inch barrel. He had the gun under his shirt when we walked in a guy asked what we were doing. *Lat pulled the revolver and stuck in this guys face and said, 'This is a robbery.'* Lat pulled this guy by the hair and made him get down on his knees. *Three other people were over by the snack bar and they saw the man on his knees and walked up. This was two dudes and a girl.* Lat told them to get on the floor and if they didn't do what he told them that he would shoot this first guy who was already on the floor. They got down on their knees away from the counter and Lat made them come closer to the control counter and they did. *They were laying down from the door so that there was a dude and then a girl and then another dude and then the last dude.* The second dude was trying to look up and Lat told him not to be looking and to turn around and lay facing the way all the others were. *He then turned around so that they were all facing back towards the snack bar.* The second dude kept looking around so *Lat fired a warning shot into the floor.* The girl screamed and then Lat told her to shut up and she kept screaming. Lat kicked the girl in the back and the second dude who was the one who kept looking up started to raise up. He was about half way up when *Lat shot him in the back of the head. Then Lat* just turned around and *shot the third dude.* This third dude was the first one Lat grabbed and made get on the floor. He shot him *the same way as the first one that he shot.* Lat threw me the gun and told me to shoot the other two. I hestitated and then he said, 'Shoot them now.' I aimed the gun at the other guy who was still left who was closest to the door and fired one time. *I hit him in the back of the head behind the ear.* I walked around the other side of them and hesitated and Lat said, 'Shoot her.' She had her face down and she just looked up at me and *I aimed and turned my head and shot her. I think I hit her in the cheek.* I had the gun and ran around and looked in the cash register over by where you get the shoes. I got all the bills and a little of the change and then went to the office but the door was locked. I went over to the cash register by the snack bar and took bills out of it too. I put the money in my pockets. I went back by the office and tried to force the door open but I couldn't get it opened. Lat was looking under the counter for a money bag and I think he got 50 or 60 dollars. He walked over by the office and I told him I thought I saw some headlights. I went outside but I didn't see anyone so when I came back in *Lat* was rumageing through their pockets and *took the wallets out of their pockets.* He took the money and I think he kept the wallets. We looked around to make sure that nobody was looking and we didn't see anybody. I asked him if he wanted to check in the back and he said no. So, we looked in the bathrooms making sure no body was in there. Then we left. I still had the gun. Lat drove and we had the windows down to his car. *He made a right on the highway and drove down for a little bit and then turned around and came back past the bowling alley.* I asked him why he shot the dudes and he said he shot the dude for raising up and playing hero ... I put the gun under the front seat after *I reloaded it and it only had one live bullet before reloading.* I don't know where the gun is now. The last time I saw the gun was I believe last Saturday night and Lat had it at that time. We went to score some pills and got 24 pills over at the dope house. These were preludins. After the gas and pills I got 95 dollars out of the deal and I think Lat got a lot more. We went over to my house that night and we did the rest of the pills. We stayed up all day and went out to the park the next day. I was scared and that is the reason that I did not tell the whole truth before and I feel like shit and feel bad about what happened and ought to take my punishment for it. I think Lat and me both ought to pay for what we did. (Note: Spelling and punctuation are exactly as set out in the admitted statement. Emphasis has been supplied by

the Court in order to give meaning to our determination whether a comparison of the details of the above statement with that of the physical proof and testimony adduced at trial, as well as the timing of the suggestive statements in the statement, corroborated the statement by independent evidence or testimony.)

Amazingly, the experienced police homicide detective who took appellant's third statement did not set out therein the date, county, city, state, nation, street address, name of the bowling alley, name of any victim, or any other fact which might expressly reflect that appellant's statement relates to the offense for which he was tried, convicted, and given the death sentence.

It is a well-settled rule of law in this state that a defendant's extrajudicial confession, standing alone, is not sufficient to affirm his conviction, and unless there is other evidence which, taken with the statement of the defendant, establishes beyond a reasonable doubt the guilt of the defendant, this Court will hold that the evidence is insufficient. See, for example, *Patterson v. State*, 140 Tex.Cr.R. 661, 146 S.W.2d 993 (1941), and the cases cited therein on page 994.

The above omissions in appellant's statement and the fact that no eyewitness to the crime testified causes this case to be one based upon circumstantial evidence, on which the jury was instructed. Although appellant did not testify, he presented the defense of alibi through witnesses.

Although appellant's first two statements were not formally admitted into evidence, the jury was informed of their contents. The first two statements reflect or indicate that appellant confessed being guilty only as a party to the offense and not as the actual culprit. See Chapter 7 of the Penal Code. Appellant's co-defendant, Lat Bloomfield, although subpoenaed, was not served and did not appear at appellant's trial. Because of the lack of independent evidence, Bloomfield was never prosecuted by the State.

■ If the above statement of appellant had adequately identified the offense ad-mitted by him as being the same offense for which he was tried, it, combined with proof of the corpus delecti, which only consists of (1) the body of the deceased must be found and identified, and (2) the death of the deceased must be shown to have been caused by the criminal act of another, see *Self v. State*, 513 S.W.2d 832, 834 (Tex.Cr. App.1974) (and the cases cited therein), would have been, without more, sufficient to sustain appellant's conviction. Since *Self*, supra, connecting the accused to the crime of murder is no longer an element of the corpus delecti of murder in this State. However, it is still an element of the offense of murder which the State must prove beyond a reasonable doubt. *Streetman v. State*, 698 S.W.2d 132, 135 (Tex.Cr. App.1985). Thus, although the corpus delecti was clearly proved beyond a reasonable doubt by the prosecution, since appellant's above statement does not sufficiently identify the act to which it refers, and the other admitted evidence does not directly connect appellant to the offense for which he was convicted, the evidence will be sufficient if, and only if, the other evidence corroborates details of appellant's statement to the extent that a rational trier of fact could conclude beyond a reasonable doubt that appellant's above written statement relates to the capital murder of Felsher for which he was convicted.

■ In this regard, we point out that in Texas the standard for appellate review of the sufficiency of the evidence is the same whether the case is based upon direct or circumstantial evidence. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Also see *Mattias v. State*, 731 S.W.2d 936 (Tex.Cr.App. 1987), and the cases cited therein; *Scott v. State*, 732 S.W.2d 354 (Tex.Cr.App.1987), and the cases cited therein; and *Rector v. State*, 738 S.W.2d 235 (Tex.Cr.App.1986).

After having carefully reviewed the record, we find that any rational trier of fact, by comparing the details of appellant's statement with the physical proof and testimony adduced at trial, as well as the timing of the suggestive statements made by appellant, could easily find beyond a reasonable doubt that appellant's statement refers to the murder of Felsher and that the murder occurred during the commission of the robbery that occurred at the bowling alley.

In detail, a comparison shows the following:

1. The police officer who took appellant's above statement testified that the only robbery-murder in which three persons were killed in a bowling alley on the date in question of which he was aware occurred in Houston, Harris County, at 14441 Northwest Freeway.

In his statement, appellant admits that four persons, three males and one female, were shot in a bowling alley during the course of a robbery: "Lat ... stuck [the revolver] in this guy's face ... Three other people ... two dudes and a girl [then came over]."

Appellant also made oral admissions within a few weeks after the commission of the offense for which he was convicted that he had taken part in a robbery; one of the admissions referred to a "bowling alley."

2. The admitted medical testimony established that Felsher was shot in her right cheek, Sims was shot in the left back part of his head, Temple was shot in his left temple, and Garner was shot in the left side of his head, just above his ear.

Appellant's statement: "I think I hit her in the cheek," "Lat shot him in the back of the head," "Lat shot the third dude the same way as the one he shot [in the back of the head]," "Lat shot the third dude the same way as the one he shot [in the back of the head]," and "I hit him in the back of the head behind the ear."

3. Photographs and testimony established that the bodies of the victims were found in a line basically parallel, in the order of Temple, Sims, Felsher, and Garner, with Garner's body closest to the door, and all facing in the direction of the snack bar.

Appellant's statement: "They were laying from the door so that there was a dude and then a girl and then another dude and then the last dude," and "They were all facing back towards the snack bar."

4. Testimony established that each victim had been shot one time with either a .357 or .38 calibre gun, most likely a Ruger if by a .357, and that one bullet was recovered from the carpet of the bowling alley, where it had apparently been fired directly. A firearms expert testified that an R–G pistol was sufficiently similar to a Ruger in appearance that a Ruger could be mistaken for an R–G.

Appellant's statement: "Lat had his 357 revolver which I think is an R–G model," "Lat fired a warning shot into the floor," and "[the gun] only had one live bullet in it before reloading," as well as the above statements concerning the shots fired at the victims.

5. Testimony was adduced that the wallet of Sims was found on the bowling alley parking lot near its entrance from United States Highway 290. The wallets belonging to Temple and Garner were found on the opposite side of the highway, along the median bordering the inside lane on what would be the driver's side of an automobile.

Appellant's statement: "Lat ... took the wallets out of their pockets ... and I think that he kept the wallets," and "Lat drove and we had the windows down to his car. He made a right on the highway and drove down for a little bit and then turned around and came back past the bowling alley."

Given the above, we find and hold that appellant's statement was sufficiently corroborated by independent evidence showing the substantive facts of the crime. Therefore, we hold that viewing the evidence in the light most favorable to the verdict the

evidence is sufficient for any rational trier of fact to find beyond a reasonable doubt that appellant committed the murder of Felsher and that it occurred in the course of the commission of a robbery. Appellant's first ground of error is overruled.

Appellant asserts in his second ground of error that the trial judge erred in overruling his objection to the admission into evidence of an extraneous offense.

It is now a well settled and fundamental principle in our law that an accused person is entitled to be tried on the accusation made in the State's pleading and should not be tried for some collateral crime or for being a criminal generally. See, for example, *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983); *Nance v. State*, 647 S.W.2d 660 (Tex.Cr.App.1983); *Smith v. State*, 646 S.W.2d 452 (Tex.Cr.App.1983). Thus, this Court has consistently held that proof of prior specific acts of misconduct, similar happenings, or the commission of extraneous criminal wrongs which are unrelated to the offense for which the accused is on trial are generally not probative of the contested material issues in the case and are inadmissible. See, for example, *Elkins v. State*, 647 S.W.2d 663 (Tex.Cr.App.1983); *Davis v. State*, 645 S.W.2d 288 (Tex.Cr.App.1983); *Bates v. State*, 643 S.W.2d 939 (Tex.Cr.App.1982).

■ However, the above general policy precluding the admission into evidence of evidence of extraneous conduct must in some circumstances give way, thus permitting the latter to become admissible evidence. Thus, extraneous transactions constituting criminal offenses shown to have been committed by the accused may become admissible evidence upon a showing by the prosecution both that the transaction is relevant to a material issue in the case and that the probative value of the evidence outweighs its inflammatory or prejudicial potential, i.e., all relevant evidence is admissible evidence unless its probative value is substantially outweighed by the danger of unfair prejudice, or it confuses the issues, misleads the jury, causes undue delay, or is needless presentation of

cumulative evidence. See *Texas Rules of Criminal Evidence*, Rules 402 and 403. Also see *Clark v. State*, 726 S.W.2d 120 (Tex.Cr.App.1986); *Boutwell v. State*, 719 S.W.2d 164 (Tex.Cr.App.1986); *Williams, supra, Mann v. State*, 718 S.W.2d 741 (Tex.Cr.App.1986); and *Phillips v. State*, 659 S.W.2d 415 (Tex.Cr.App.1983); *Rubio v. State*, 607 S.W.2d 498 (Tex.Cr.App.1980). The material issues in a criminal prosecution always consist of the elements of the offense. *Davis v. State*, supra. Of course, whether an extraneous offense might be admissible must be decided on an ad hoc basis.

The evidence about which appellant complains originated when, almost a month from the day the offense occurred at the bowling alley, he was stopped by a League City police officer for speeding on a motorcycle. It was determined that the motorcycle had been stolen. The record reflects that after the League City officer stopped appellant, another League City officer arrived on the scene, in the capacity of a "back-up unit", and thereafter gave appellant his "Miranda warnings",[2] after which appellant volunteered to that officer, "that he was not going to the penitentiary for any damn bike. [You] better check Houston for bigger things." Enroute to the station house, appellant volunteered another statement, that "he wasn't going to prison for a mere motorcycle theft, that he would go for bigger things." Needless to say, the League City police officers contacted the Houston police department, whose members thereafter came to League City and spoke with appellant and obtained from him the first of three written statements. All of the above evidence concerning the motorcycle theft was admitted over objection.

■ The State argues in reply, inter alia, that appellant's statement does not reflect or indicate any evidence of an extraneous offense. We disagree. In the context in which they were made, appellant's statements clearly imply that he had committed theft of the motorcycle and that he had

---

**2.** See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

committed some offense much more serious than theft of a motorcycle. His statements, however, also support the conclusion that his last written statement was not fabricated.

In this instance, we find that the above volunteered statements of appellant were admissible because appellant, through testimony, injected into the case the defense of alibi, thus raising the issue whether his above written statement was truthful. Thus, the relevancy of appellant's oral volunteered statements to the officers clearly outweighs the prejudice of the implied theft of the motorcycle.

Having found that a valid exception permitted the admission into evidence of the above volunteered statements of appellant, we will not address the State's other argument that the statements were admissible as "res gestae."

We also find and hold that, even if we assumed that the trial judge erred, which we do not find, given the overwhelming circumstantial evidence that was presented concerning appellant's connection to the murder of Felsher, we cannot state that there is a reasonable possibility that such deprived appellant of a fair and impartial trial. Appellant's second ground of error is overruled.

Appellant asserts the following as his third ground of error: "The Trial Court committed reversible error by refusing to give a limiting instruction to the jury at the guilt phase of the trial on the law with regard to use of evidence reflecting prior inconsistent statements of witnesses admitted for the purpose of impeachment only." We disagree.

Appellant states the following: "The general rule in this regard is that if evidence of prior inconsistent statements has been admitted by the court for the limited purpose of impeachment of one or more witnesses, the Court must give a limiting instruction to the jury on the purposes for which such impeachment evidence has been admitted and the uses the jury could make of same. (Citations omitted.)" Like the State, we find that appellant mistakenly relies upon cases which hold that evidence admitted *only* for impeachment of a State's witness may not be used as primary evidence against the accused and the jury should be so instructed. In this case, however, none of the testimony of the witnesses comes within the authorities upon which appellant relies. A careful reading of the record makes it obvious to us that it is highly questionable whether the prior statements were used to impeach the witnesses. For example, some of the questions the witnesses were asked concerned only whether they had refreshed their memories from the statements and the witnesses answered in the negative. In reference to another witness, the witness's prior statement was used to refresh the witness's memory. In one instance, although appellant obtained the witness's prior statement, we have yet to find in the record where appellant actually used it in his questioning of the witness. As the State points out, and we agree, there is a world of difference between impeaching a witness through a prior statement and refreshing the witness's memory from a prior statement that the witness gave. See, for example, *Guerra v. State*, 668 S.W.2d 707 (Tex.Cr.App.1983). We find that the questioning of the witnesses from their prior statements merely allowed clarification of the witnesses' testimony, even though we also find that such sometimes resulted in a slight altering of their testimony. Therefore, because the prior statements of the witnesses were never admitted for the purpose of impeachment *only*, there was no necessity for the trial judge to give the requested limiting instruction. Furthermore, if any impeachment occurred, it occurred through cross-examination by defense trial counsel, and no limiting instruction is required if the defense raises the impeaching evidence. See, for example, *Villarreal v. State*, 576 S.W.2d 51 (Tex.Cr.App.1978).

Appellant's third ground of error is overruled.

In his fourth and final ground of error, appellant asserts that the trial judge erred in excluding prospective juror Doro-

thy L. Cone over his "exception." Appellant claims that such excusal was in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We disagree.

Although the record reflects that Cone initially stated that she believed in the death penalty and that she could answer the special issues, see Article 37.071, V.A. C.C.P., the record also reflects that she thereafter "backpedalled" after the prosecuting attorney pointed out that the effect of two "yes" answers would be to have the death penalty assessed. Cone eventually stated, and maintained this position, that knowing the effect of answering the two special issues in the affirmative could result in the assessment of death she could not answer the questions solely on the evidence that might be presented. We find and hold that granting a State's challenge for cause under these circumstances was not error. See, for example, *Williams v. State*, 682 S.W.2d 538 (Tex.Cr.App.1984); *Kelly v. State*, 669 S.W.2d 720 (Tex.Cr.App. 1984).

Appellant's fourth ground of error is overruled.

Finding that none of appellant's grounds of error rise to the level of reversible error, we affirm.

CLINTON and DUNCAN, JJ., concur in the result.