**Vernell SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14-87-00485-CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 8, 1989.

Sandra Garfinkel, Bob Wicoff, Houston, for appellant.

Lynne Parsons, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION ON REHEARING

DRAUGHN, Justice.

In response to the State's Motion for Rehearing, we stayed this appeal and remanded this cause to the trial court for a determination of whether the appellant had requisite notice of the State's intention to seek an affirmative finding on use of a deadly weapon. The trial court has since entered Findings of Fact and Conclusions of Law in this regard. However, the Court of Criminal Appeals in two recent opinions modified the notice requirements in such cases so as to be determinative of this issue. We therefore withdraw our earlier opinion of August 11, 1988, and substitute this opinion which applies the new standards laid down by the Court of Criminal Appeals to the facts of this case.

Appellant was convicted by a jury of the offense of attempted capital murder. The jury also made an affirmative finding on use of a deadly weapon. The jury assessed punishment of confinement for life in the Texas Department of Corrections. In five points of error appellant complains the trial court erred by permitting the prosecutor to elicit evidence of an extraneous offense, by submitting the parole charge required under TEX.CRIM.PROC.CODE ANN. art. 37.07 § 4 (Vernon 1981), by overruling his objection to improper jury argument, and by submitting a special issue and making an affirmative finding on the use of a deadly weapon. We affirm the judgment of the trial court.

At approximately 6:30 p.m. on September 9, 1986, Houston Police Officer David Neck was traveling southbound on Buffalo Speedway in a marked police unit. He observed a blue Cutlass in the northbound lane exceeding the speed limit. Officer Neck was able to see the driver's face, and to determine he was not wearing a seat belt. Officer Neck made a u-turn and pursued appellant. Since he did not want to stop appellant before his radio cleared and he could inform the dispatcher, Officer Neck continued to follow appellant. He noticed the sticker designating the month of expiration was missing from the Cutlass license plate.

When the radio cleared, Officer Neck informed the dispatcher of his location and Cutlass's license number. He then pulled appellant over to the roadside. As Officer Neck approached the vehicle, he noticed the driver's seat was in a reclining position. Just as he reached the door on the driver's side, the seat came forward, and the door sprang open. Officer Neck saw the flash of a gun barrel, heard a bang, and fell to the ground wounded. As the blue Cutlass sped away, Officer Neck crawled to his police unit and radioed information on his situation, providing a description of appellant and the vehicle.

Officer Richard Salter was on duty at the time of the shooting. Within minutes of the incident he observed a blue Cutlass, driven by a black male fitting appellant's description. The driver exited the vehicle and avoided apprehension by running into a nearby apartment complex. Further investigation of the vehicle revealed it had been stolen earlier in the day, and appellant's fingerprints were found on it. Approximately one month later, appellant was apprehended at a Houston-area hotel. Appellant's trial and conviction of attempted capital murder and life sentence followed.

In his first point of error, appellant complains of testimony elicited from William Steen. Steen testified he was an old friend of appellant's. After the shooting, Steen had twice encountered appellant at a drugstore. Steen stated he knew appellant was wanted by police, so was surprised to see him the second time. Steen asked appellant "What's the deal." Appellant told Steen he did what he had to do, because he didn't want to go back to jail.

Appellant objected to this as evidence of an extraneous offense. The State made no effort to go into any specifics of the prior

offense. The State offered the statement made to Steen to establish appellant's motive, to provide the jury with an explanation for an otherwise meaningless shooting. In the context of its use, the probative value of the testimony was not outweighed by unfair prejudice. *Soffar v. State*, 742 S.W.2d 371, 377 (Tex.Crim.App.1987); *Hughes v. State*, 563 S.W.2d 581, 589 (Tex. Crim.App.1978); *Morrow v. State*, 735 S.W.2d 907 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). Point of error number one is overruled.

■ In points of error two and three, appellant contends the trial court committed harmful error by including the parole charge mandated by statute at the time of trial. The Court of Criminal Appeals has now ruled TEX.CODE CRIM.PROC. art. 37.07 § 4(a) unconstitutional. *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988). Submission of the parole charge is reversible error, unless we find that the error made no contribution to appellant's punishment. TEX.R.APP.P. 81(b)(2).

The jury was presented overwhelming evidence that appellant intended to cold-bloodedly kill a police officer who stopped him for a traffic violation. The jury was aware appellant was driving a stolen car at the time of the shooting. The jury was also aware that, between 1982 and 1985, appellant had been convicted of possession of a controlled substance, evading arrest, and three different charges of carrying prohibited weapons, one including a "sawed-off" shotgun.

Further, the trial court specifically instructed the jury not to consider the manner in which the parole law may be applied to appellant. The trial court also instructed the jury the parole law was the exclusive jurisdiction of the Governor and the Board of Pardons and Parole, and must not be considered by them in determining appellant's punishment. In the absence of evidence to the contrary, we may presume the jury followed the trial court's instruction. *Rose*, 752 S.W.2d at 554. Accordingly, we find, beyond a reasonable doubt, the submission of the parole charge did not contribute to appellant's punishment. Points of error two and three are overruled.

■ Appellant's fifth point of error alleges the prosecutor committed egregious error when he attempted to explain the parole charge during his final argument. Appellant made no such objection at the time of trial. Thus, he has waived any error unless the argument of the prosecutor was so prejudicial that no instruction could have cured the harm. *Green v. State*, 682 S.W.2d 271, 294 (Tex.Crim.App. 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Further, since isolated sentences taken out of context may take on a meaning different from that understood by the jury, we must view the alleged error in the context of the entire argument. *Mosley v. State*, 686 S.W.2d 180, 183 (Tex.Crim.App.1985); *Henson v. State*, 683 S.W.2d 702, 704 (Tex.Crim.App. 1984).

The prosecutor told the jury that because of the deadly weapon finding, if sentenced to life, appellant would have to serve at least twenty calendar years before he could be considered for parole. But unlike the argument in *Clay v. State*, 741 S.W.2d 209, 210 (Tex.App.—Dallas 1987, no pet.), upon which appellant relies, the prosecutor in the instant case did not tell the jury they could consider how the parole law would affect appellant. In fact, the prosecutor specifically stated to the jury, "[w]hat you are *not* to consider is whether he would be paroled and try to factor in [, t]hat's a decision *they* make." [Emphasis added]. The prosecutor asked the jury to sentence appellant to life based on the evidence, the crime itself, the protection of the community, and appellant's cold disregard for the life of another human being.

Having considered the argument in its entirety, we find no reversible error. Certainly the prosecutor's remarks were not of the type so prejudicial that, had appellant made a timely objection, they could not have been cured by an instruction to disregard. Appellant's point of error is overruled.

■ In his final point of error, appellant contends the judgment should be reformed to delete the finding of a deadly weapon because appellant had no notice such a finding would be sought by the State. In asserting this point, appellant relies on *Ex parte Patterson,* 740 S.W.2d 766 (Tex. Crim.App.1987). In *Patterson,* decided after the present cause went to trial, the Court of Criminal Appeals discovered that a defendant has a fundamental, constitutional liberty interest in when his or her eligibility for parole begins in connection with an affirmative deadly weapon finding under Art. 42.12 Sec. 3g(a)(2) and 42.18 Sec. 8(b), V.A.C.C.P. Under this latter article the defendant's eligibility for parole does not begin until he has served one-third of his maximum sentence or 20 calendar years, whichever is less, without regard to any good conduct time if an affirmative finding is made that the defendant used or exhibited a deadly weapon in the commission of the offense.[1] The Court, in *Patterson,* held that this liberty interest in parole, not found in the due process clause of the U.S. Constitution by the Supreme Court, was, however, encompassed within Art. I, Sec. 19, the "due course of law" provision of the Texas Constitution. *Patterson* at 774. Because of the fundamental nature of this liberty interest in parole, the defendant is entitled to notice if the State intends to seek a deadly weapon finding at trial and the failure of the state to give such notice is such a fundamental and egregious error that failure to supply it constitutes reversible error even though the defendant failed to object to its submission to the jury. *Patterson* at 776–777. *Patterson* held that this notice most logically should be in the indictment but was unclear as to what other notice might be sufficient.

In this case, tried before the *Patterson* decision determined the existence of this new fundamental liberty interest, there was, of course, no specific notice of the State's intention to seek a deadly weapon finding in the indictment. However the indictment did charge that the defendant did:

"with intent to commit capital murder, attempt to cause the death of D.R. Neck, hereafter styled the Complainant, a peace officer in the lawful discharge of an official duty by shooting a gun in the direction of the Complainant, knowing at the time that the Complainant was a peace officer."

In the interim since the trial court at our direction held a hearing and made findings of fact with regard to the question of notice, the Court of Criminal Appeals modified *Patterson* concerning the notice required in such cases, and that modification is, in our opinion, determinative of this issue without the necessity of referring to the trial court's findings.

In *Ex Parte Beck,* 769 S.W.2d 525 (Tex. Crim.App.1989), the court held that "any allegation which avers a death was caused by a named weapon or instrument necessarily includes an allegation that the named weapon or instrument was, 'in the manner of its use ... capable of causing' (since it did cause) death." The court further expanded this logical reasoning to cover allegations in the indictment that the defendant did "attempt to cause the death of (the complainant)...." *Eason v. State,* 768 S.W.2d 312 (Tex.Crim.App.1989). Therefore, such allegations are now sufficient to provide notice to the defendant that the nature of the weapon alleged in the indictment is an issue to litigate in the trial. The remainder of the allegation in this case differs slightly from that in *Beck,* and presumably that in *Eason,* because it alleges that the defendant did attempt to cause the death of the officer by "shooting a gun in the direction of (the complainant) ..." as opposed "to shooting him with a gun." However, we do not perceive this distinction to make a difference in the outcome. The operative words are that the defendant did "attempt to cause the death of ... by shooting a gun." Accordingly, we find that appellant had notice of the deadly weapon issue in this case. Appellant's final point of error is overruled.

---

1. The relevant periods are now "one-fourth of the maximum sentence or 15 calendar years

..." Art. 42.18 Sec. 8(b)(1) V.A.C.C.P. (effective Sept. 1, 1987).

We affirm the judgment of the trial court.