Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00254-CR

Mark Anthony **JAUREGUI**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No 7, Bexar County, Texas
Trial Court No. 235663
Honorable Monica Guerrero, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  May 19, 2010

AFFIRMED

Appellant Mark Anthony Jauregui was convicted by a jury of the offense of assault causing bodily injury to his wife, Jeanette, and found not guilty on the offense of Interference with Emergency Telephone Call.  The trial court assessed punishment at one year confinement in the Bexar County Jail, suspended and probated for a period of two years.  On appeal, Jauregui asserts: (1) the evidence is legally and factually insufficient to support the jury verdict; (2) the trial court erred in denying Jauregui's motion for mistrial based on the State eliciting evidence of

an extraneous offense before the jury; and (3) the State made an improper and prejudicial closing argument alleging Jauregui fabricated testimony. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Jauregui served in Iraq with the United States Navy. Shortly after returning from Iraq, Jauregui and Jeanette were at a local bar drinking with friends. After they returned to their residence, both allegedly intoxicated, they argued about Jauregui's suspicion that she had committed adultery during his absence. As Jauregui attempted to call the individual in question, at approximately 3:00 a.m., Jeanette became very agitated, their voices escalated, and they struggled over a cellular telephone. According to Jeanette's testimony, Jauregui held her down on the couch and would not let her speak. She further testified that he placed a pillow on her face in an attempt to keep her quiet and placed his hands on her neck. She was able to get away and tried to set off an alarm in the pantry but was unsuccessful; meanwhile, Jauregui armed himself with a knife. Jeanette then ran across the street and started banging on her neighbor's front door. Not knowing who was at her door at 3:00 in the morning, the neighbor called the police. By the time the officers arrived, Jauregui had fled the residence and Jeanette was outside. The responding officer noted red marks on Jeanette's neck when he arrived although the marks were no longer visible by the time photographs were taken.

## LEGAL AND FACTUAL SUFFICIENCY

In his first issue on appeal, Jauregui argues that the evidence is both legally and factually insufficient to support the jury verdict.

## A. Standard of Review

In order for evidence to be legally sufficient, it must "convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443

U.S. 307, 316 (1979); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). We review the legal sufficiency of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). As "the exclusive judge of the credibility of witnesses and of the weight to be given their testimony," the jury must resolve all conflicts in the evidence. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

In conducting a factual sufficiency review, we view all of the evidence in a neutral light and set aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). In reviewing a factual sufficiency challenge "the appellate court should be mindful that a jury has already passed on the facts, and convicted, and that the court should never order a new trial simply because it disagrees with the verdict, but only where it seems to the court to represent a manifest injustice." *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). The jury may choose to believe all, some, or none of the testimony or evidence presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

**B. Assault Bodily Injury**

Assault Bodily Injury is defined under section 22.01 of the Texas Penal Code. The statute provides that "a person commits an offense if the person intentionally, knowingly, or recklessly causes bodily injury to another, including his spouse." *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2009). "Bodily injury" is defined as physical pain, illness, or any impairment of physical condition. *Id*. at § 1.07(a)(8). This definition of bodily injury is

"purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989); *see also Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975) (holding that physical pain caused by twisting victim's arm was enough to satisfy "bodily injury").

Jauregui argues that the State failed to elicit testimony that he used his hands to commit the acts of assault, and that the jury's finding of not guilty on the charge of interference with an emergency telephone call is inconsistent with their guilty verdict on the assault charge. Jauregui argues the testimony is clear that there was a struggle over a cellular telephone and that Jeanette was the aggressor in taking the telephone away from him.[1] Jauregui argues that the State failed to prove that he choked his wife with his hands as alleged in the information. While Jauregui testified that he never put his hands around his wife's throat, Jeanette testified he placed his hands on her neck during the struggle. While the officer did not observe the assault, the State provided the jury with the officer's testimony, that of the neighbor, and Jeanette's version of the assault. The jury also heard that the officer saw "a little redness to her neck" consistent with her version of the assault. While Jauregui presented his own testimony as to what occurred, the jury was free to decide which version of the facts to believe. *See Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).

With regard to the second charge, there was conflicting evidence on the issue of making an emergency telephone call. Jeanette testified that she intended to call 911 and that Jauregui's possession of the phone prevented her from calling. There was no testimony, however, that Jauregui knew that she wanted to call 911. Thus, the jury's failure to find Jauregui guilty of interfering with an emergency call was not inconsistent with the guilty finding on the assault

---

[1] Jauregui, however, never raised the issue of self-defense to the trial court and never requested an instruction in the jury charge. *See Booth v. State*, 679 S.W.2d 498 (Tex. Crim. App. 1984). Accordingly, any argument on appeal that Jauregui's actions are excused by self-defense is not preserved for his appeal. TEX. R. APP. P. 33.1.

charge. *See Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997) (jury free to decide version of facts to believe).

Reviewing the evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Jauregui intentionally, knowingly, or recklessly caused bodily injury to another person, specifically his wife. *Jackson*, 443 U.S. at 319. The evidence also supports the jury's failure to find Jauregui committed the charged offense of interference with an emergency telephone call. *Id.* Further, reviewing all the evidence without the prism of "in the light most favorable to the prosecution," we cannot say that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Watson*, 204 S.W.3d at 414-15. Thus, the evidence is both legally and factually sufficient to support Jauregui's conviction. Accordingly, we overrule Jauregui's first issue on appeal.

### EXTRANEOUS OFFENSE EVIDENCE

Jauregui contends the trial court abused its discretion in denying his motion for mistrial when fingerprint examiner Ralph Looney referred to a prior unidentified arrest. During direct examination, the State asked Looney when Jauregui's fingerprints were placed within the San Antonio Police Department system. Surprisingly, Looney replied: "The arrest date was 12/26 of 2000 and the follow-up date was 12/27 of 2000, the next day." This referenced a prior arrest on different charges almost seven years prior to the incident in question. Defense counsel immediately objected and asked the trial court to declare a mistrial based on the jury being informed of a prior arrest. The trial court denied the mistrial.

Jauregui asserts the comment was so inflammatory that it was incurable by an instruction from the trial court to disregard, and thus a mistrial should have been granted. Jauregui does not

contest the State's assertion that Looney's reference to a previous arrest was inadvertent and unsolicited. While conceding that Looney's reference to the arrest was inadmissible, the State argues the response was unsolicited by the State, the trial court did not err in refusing to grant a mistrial, and Jauregui failed to request an instruction from the trial court to disregard the evidence.

Under Texas Rule of Evidence Rule 404(b), evidence of prior criminal conduct is generally inadmissible to prove action in conformity therewith. *Dickson v. State*, 246 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). This rule reflects the well-established principle that a defendant "should not be tried for some collateral crime or for being a criminal generally." *Soffar v. State*, 742 S.W.2d 371, 377 (Tex. Crim. App. 1987). Evidence of an extraneous offense "is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him." *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). However, not every inadvertent reference to prior criminal conduct will result in a mistrial. We must first examine whether Jauregui properly preserved his right to a mistrial when he did not first seek an instruction to disregard the evidence. *See Young v. State*, 137 S.W.3d 65 (Tex. Crim. App. 2004).

In *Young*, the court of criminal appeals reviewed the purpose behind a trial court's corrective instruction: "[A]n instruction to disregard attempts to cure any harm or prejudice resulting from events that have already occurred." *Id*. at 69. Importantly for this case, "[W]here the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew." *Id*. Yet, the failure to request an instruction does not prevent appellate review when the objectionable testimony is so harmful and

prejudicial that it is incurable. *Id*. at 70. Because Jauregui sought no instruction, our scope of appellate review focuses not on whether the admission of Looney's testimony was error, but whether the testimony was so prejudicial and harmful that it was incurable, and a mistrial was required.[2]

Generally, a mistrial is reserved for those extreme circumstances that are highly prejudicial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "A witness's inadvertent reference to an extraneous offense will seldom necessitate a mistrial." *Howard v. State*, No. 04-07-00722-CR, 2008 WL 3926392, *2 (Tex. App.—San Antonio Aug. 27, 2008, no pet.); *see also Huffman v. State*, 234 S.W.3d 185, 195-96 (Tex. App.—San Antonio 2007, pet. dism'd); *Hughes v. State*, 878 S.W.2d 142, 154 (Tex. Crim. App. 1992). Rather, a prompt instruction to disregard will generally cure any prejudice associated with the improper testimony. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Herrero v. State*, 124 S.W.3d 827, 836 (Tex. App—Houston [14th Dist.] 2003, no pet) (stating that mistrials "ought to be exceedingly uncommon and employed only when less drastic remedies are inadequate to the task of removing residual prejudice."). Prejudice is incurable only when "the reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998).

Although evidence of an extraneous offense is inherently prejudicial, Looney's extremely brief and nondescript testimony about Jauregui being in "custody" was the only reference to an arrest during the guilt-innocence phase of the trial. *Archie v. State*, 221 S.W.3d 695, 700 (Tex.

---

[2] "If an objectionable event occurs before a party could reasonably have foreseen it, the omission of objection will not prevent appellate review." Thus, although a party properly should seek an instruction for the inadvertent admission of testimony, he does not forfeit his appeal by failure to seek such an instruction. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).

Crim. App. 2007). Looney's brief testimony was not so prejudicial and of such character "to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We, therefore, overrule Jauregui's second issue on appeal.

### IMPROPER JURY ARGUMENT

In his final issue on appeal, Jauregui argues that the State made an improper and prejudicial closing argument asserting that Jauregui fabricated his testimony. During closing argument, the State argued, "Now, his story, this happened in November of 2007. He came up here and told you his story — well, it's a lot of time. You can develop a story over time." Jauregui's counsel objected, "Objection, Your Honor. There's no evidence of that," and the trial court overruled the objection.

Proper jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). The State is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable and offered in good faith. *Allrige v. State*, 762 S.W.2d 146, 156 (Tex. Crim. App. 1988); *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). To determine whether an argument properly falls within one of these categories, we must consider the argument in light of the entire record. *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). To constitute reversible error, the argument must be manifestly improper or inject new, harmful facts into the case. *Gaddis*, 753 S.W.2d at 398; *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986).

Jauregui's case centered on impeaching the credibility of the officer and Jeanette. Accordingly, the issue became one of "he said, she said" wherein the jury was required to determine the credibility of the witnesses, including the credibility of Jauregui. Credibility was, therefore, a crucial issue for the jury. We, therefore, conclude that the State permissibly questioned the credibility and trustworthiness of the defense witnesses, specifically Jauregui. *Mangana v. State*, 177 S.W.3d 670, 675 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Satterwhite v. State*, 858 S.W.2d 412, 425 (Tex. Crim. App. 1993)); *Blondett v. State*, 921 S.W.2d 469, 475 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding prosecutor's argument that defendant listened to testimony of earlier witnesses and then fabricated his own testimony as permissible).

## CONCLUSION

Although the witnesses' testimony conflicted, there was legally and factually sufficient evidence to support the jury's verdict. Additionally, the trial court did not err in declining to grant a mistrial. Finally, based on a review of the entire record, the State's argument attacking Jauregui's credibility fell within acceptable jury argument. Accordingly, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH