Richard NELSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00228–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 14, 1994.

Philip C. Banks, Bryan, for appellant.

Bill Turner, Eric D. Smith, Brazos, for appellee.

Before OLIVER–PARROTT, C.J., and HEDGES and ANDELL, JJ.

**OPINION**

OLIVER–PARROTT, Chief Justice.

A jury found the appellant, Richard Nelson, guilty of possession of a controlled substance. The court found one enhancement paragraph true and assessed punishment at 20–years confinement. We affirm.

Officers Thane and Darby of the Bryan Police Department were members of the

Street Crime Apprehension Team (SCAT Team). In the early morning hours of December 28, 1991, the SCAT Team was targeting certain high drug traffic areas in Bryan, Texas, and Officers Thane and Darby were staked out across the street from a local club, "Willie R's." At about 3:30 a.m., Officers Thane and Darby observed two people making what the officers believed to be drug transactions with people driving up and down the street in front of the club. The two suspects would stand outside the club and wait for someone in a passing car to call out to them. Then one of them would approach the car, give something to an occupant of the car with a cupped hand, and receive money in return. A third person, appellant, was standing near the two suspects, but the officers did not observe him exchanging anything with the suspects or the passing cars. From their surveillance position, the officers observed what appeared to be four different drug transactions before they decided to make an arrest. As the suspects approached the fourth car, Officers Thane and Darby contacted a third officer, who was in an unmarked car, and told him to come in and detain the vehicle so they could apprehend all of those involved.

When the unmarked unit came upon the scene, the driver of the fourth car accelerated down the street, with the unmarked unit in pursuit. Officers Thane and Darby, meanwhile, came out from their surveillance position to apprehend the two suspects. The two suspects did not notice the officers coming up behind them, but the appellant did. Upon spotting the officers, appellant turned around and brought his cupped hand up to his mouth while walking to a nearby pickup. Officer Thane testified that he had observed such hand-to-mouth behavior some 35 to 40 times in known drug areas and that in similar circumstances such behavior was indicative of a person trying to conceal narcotics in his mouth or dispose of the narcotics by ingesting them.

Officer Thane asked appellant to open his mouth, he complied, and Officer Thane observed numerous pieces of white rock that had the appearance of crack cocaine. Officer Thane asked the appellant if he could remove one of the chips, and the appellant told him that, "he could charge him if he wanted to, but he wasn't going to get anything out of his mouth." The appellant told the officer that it was only Certs,[1] and he continued to chew up and swallow what was in his mouth. Officer Thane then arrested appellant for possession of a controlled substance.

Officer Thane asked the appellant if he would consent to give a urine sample; he would not. Officer Thane obtained an evidentiary search warrant and served it on the appellant at the hospital that he had been taken to by Officer Darby. After being served with the warrant, the appellant gave the urine sample, which was divided into two sterilized cups. One cup tested positive for cocaine at the hospital, after which the appellant was taken into custody and charged with possession. Officer Thane put the other cup in a heat-sealed evidence bag and placed it in an evidence locker at the police station until it was transported to a DPS crime lab in Austin.

 In his second point of error, the appellant contends that the trial court erred in denying his motion for instructed verdict because the evidence was insufficient to support the jury's verdict. A challenge to the denial of an instructed verdict is identical to a challenge to the sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990). When determining the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found all the elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 157 (Tex.Crim.App. 1985). The jury is the judge of the credibility of the witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony, accepting or rejecting such portions thereof as it sees fit. *Banks v. State*, 510 S.W.2d 592, 595 (Tex.Crim.App.1974).

1. Certs is a brand name, over the counter breath mint.

To establish unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised care, custody, control, or management over the contraband; and (2) the accused knew the matter possessed was contraband. *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1988). The appellant asserts that, without other evidence, the mere presence of a controlled substance in the body of the accused is not sufficient evidence to support a conviction for possession. He cites *Jackson v. State,* 833 S.W.2d 220 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd), for the proposition that to hold that mere presence of the controlled substance in the body of the accused was by itself sufficient "would amount to changing the offense of possession of cocaine to 'use of cocaine' and the United States Supreme Court has made clear that such an offense would violate the Eighth Amendment without proof of possession at a particular time and place." *Id.* at 223. (citing *Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 1420–21, 8 L.Ed.2d 758 (1962)). Unlike *Jackson,* in which all the State could prove was the presence of cocaine in the bloodstream of the accused's stillborn fetus, there is other corroborative evidence of possession in this case.

Officer Thane testified that he saw the appellant put his cupped hand to his mouth and that such behavior in similar circumstances was consistent with the concealment of narcotics by swallowing them. Officer Thane looked in the appellant's mouth and saw numerous chips and pieces of white rock that appeared to be crack cocaine. Officer Thane testified that he had seen crack cocaine on more than 350 occasions. The appellant claimed he had Certs in his mouth, but Officer Thane did not smell the odor of Certs, nor did the substance have the appearance of Certs. Officer Thane testified that crack cocaine is odorless. Officer Thane noted that the appellant later said he was becoming dizzy.

As a member of the SCAT Team, Officer Thane received specialized training in surveillance and enforcement techniques of narcotics trafficking. He has made over 350 narcotics arrests and observed hand-to-mouth behavior such as the appellant exhibited at least 35 times in known drug areas. Each time Officer Thane observed such behavior and was able to retrieve the substance from the suspect's mouth, it tested positive as a controlled substance. In the cases that Officer Thane was unable to retrieve the substance, an analysis of the suspect's urine tested positive for cocaine.

When viewed in the light most favorable to the conviction, the evidence was sufficient to prove that the appellant exercised control over the contraband and that he knew the substance was contraband. *Martin,* 753 S.W.2d at 387. In holding that the evidence was sufficient, however, we do not place any reliance on the appellant's refusal to consent to Officer Thane's request to remove some of the chips from his mouth. The State has argued that the appellant's refusal to remove a chip from his mouth or voluntarily submit to a urine test is also a circumstance to be considered in weighing the sufficiency of the evidence. We disagree. The exercise of constitutional rights is not and should not be any indicia of guilt. Nevertheless, the evidence is otherwise sufficient, and we overrule appellant's second point of error.

In his first point of error, the appellant claims he was denied effective assistance of counsel. The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex. Crim.App.1980). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effective assistance of counsel means counsel likely to render reasonably effective assistance. *Ex parte Cruz,* 739 S.W.2d 53, 57–58 (Tex.Crim. App.1987). In order to obtain a reversal due to ineffective assistance at the guilt/innocence stage, appellant must show that: (1) counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ Because of the difficulties inherent in an evaluation of counsel's performance, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2065. Strategic choices made after a thorough investigation of law and facts relevant to plausible options are thus virtually unchallengeable. *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993). An error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex.Crim.App.1980); *Pinkston v. State*, 744 S.W.2d 329, 333 (Tex. App.—Houston [1st Dist.] 1988, no pet.).

■ The appellant first contends that his trial counsel was ineffective by not requiring the State to prove up the chain of custody of the urine sample because the evidence clerk who testified at trial was not the same clerk who placed the sample in the evidence locker. Officer Thane described the appearance of the evidence bag and sample and testified that he heat-sealed the urine sample in the bag before placing it into the evidence locker. The forensic chemist for the DPS in Austin testified that the appellant's urine sample was in a sealed condition before she conducted her analysis on it. In a situation like this, where the State has shown the beginning and end of the chain of custody, any gaps in between go to the weight and not the admissibility of the evidence. *Salinas v. State*, 507 S.W.2d 730, 731 (Tex.Crim. App.1974). Thus, it was not ineffective assistance of counsel to fail to object to admissible evidence. *Cooper v. State*, 707 S.W.2d 686, 689 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

■ Secondly, the appellant complains that his trial counsel did not move to suppress the evidence of the urine test results because his arrest and search were illegal. Contrary to the appellant's assertions, his arrest and search were not illegal. Officer Thane testified that the appellant's reaction to the approaching officers was to put something in his mouth and run behind a nearby truck. Officer Thane asked the appellant to open his mouth, to which the appellant consented and showed Officer Thane the numerous pieces of white rock in his mouth, that he said were Certs. Officer Thane did not smell the odor of Certs, however, and believed the white chips to be crack cocaine, which is odorless. Officer Thane testified that he had observed crack cocaine more than 350 times. He concluded that the appellant had most probably ingested crack cocaine. All of these factors contributed to Officer Thane's probable cause. Neither the arrest nor the search were illegal; consequently, it was not ineffective for the appellant's trial counsel to not object. *Cooper*, 707 S.W.2d at 689. We overrule the appellant's first point of error.

■ In his third point of error, the appellant complains of the trial court's refusal to quash the entire jury panel after one of the venire members said, "I don't want to hurt this man's case, but I've been involved with people that I know he knows, that have approached me about buying drugs." The appellant's attorney moved to quash the panel, but this motion was overruled by the trial judge.

In the absence of any evidence that any of the trial jurors heard or could have been influenced by the remark, no harm to the defendant is shown. *Freeman v. State*, 556 S.W.2d 287, 308 (Tex.Crim.App.1977). *Freeman* and its progeny hold that the appellant failed to show he was harmed by a prejudicial remark during voir dire because the records in those cases did not demonstrate that any other panel members even heard the remark. *See also Christopher v. State*, 779 S.W.2d 459, 462 (Tex.App.—Dallas 1989), *aff'd on other grounds*, 833 S.W.2d 526 (Tex. Crim.App.1992); *Zuniga v. State*, 635 S.W.2d 780, 783 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd).

Likewise, the record before us does not show that any of the actual jury members heard the remark. The record does indicate that the trial court questioned 11 members of the panel, who all stated that they had heard

the substance of the remark. Every one of the panel members questioned about the remark, however, was stricken for cause unrelated to the remark and excluded from the jury. There is no evidence in the record that any of the actual jury members heard the remark that was blurted out, much less that they were influenced by it. Absent any evidence in the record that members of the jury heard the remark, the appellant was not harmed by it. *Freeman,* 556 S.W.2d at 308. We overrule the appellant's third point of error.

In his fourth point of error, the appellant contends that the trial court erred by permitting improper jury argument by the State. During closing argument, the State argued as follows:

> Nobody is going to sit there and say, "Yes, you can get it out of my mouth and arrest me and have some physical evidence." If you find him not guilty because of that, you tell every dope dealer in the community that when they see police officers, all they have to do is swallow the drug because no jury in Brazos County will convict them. That is the message you will tell these people in the community....

> And you must remember that every dope dealer, don't believe that they won't know about it and they won't hear the message you send. They'll be waiting and listening to find out if a Brazos County jury will convict an individual for swallowing drugs.

There are four permissible areas of jury argument: (1) a summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to an argument of opposing counsel; and (4) a plea for law enforcement. *Borjan v. State,* 787 S.W.2d 53, 55 (Tex.Crim.App.1990). Improper argument constitutes reversible error when, in light of the record as a whole, it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused into the trial proceedings. *Porter v. State,* 832 S.W.2d 383, 385 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

While the State may not tell the jury that the community expects a particular verdict, *Cain v. State,* 549 S.W.2d 707, 717

(Tex.Crim.App.), *cert. denied,* 434 U.S. 845, 98 S.Ct. 149, 54 L.Ed.2d 111 (1977), the State may, however, argue the impact of the verdict on the community. *Borjan,* 787 S.W.2d at 56. A prosecutor is allowed to argue that juries should deter specific crimes by their verdict. *Id.* at 55; *Arocha v. State,* 495 S.W.2d 957, 959 (Tex.Crim.App.1973). Here, the prosecutor's comments constituted a plea for law enforcement, and as such were proper jury argument. We overrule the appellant's fourth point of error.

We affirm the judgment of the trial court.