**Jon Alan ASHCRAFT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–94–00022–CR.**

Court of Appeals of Texas,
Corpus Christi.

May 4, 1995.

Rehearing Overruled June 22, 1995.

821

Alfredo Padilla, Brownsville, for appellant.

Luis V. Saenz, Dist. & County Atty., Brownsville, John A. Olson, Asst. County & Dist. Atty., Brownsville, for appellee.

Before SEERDEN, C.J., and HINOJOSA and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

A jury convicted appellant, Jon Alan Ashcraft, of burglary of a habitation, and the

trial court assessed punishment at seventy-five years in prison. Appellant challenges his conviction by ten points of error. We affirm.

Gloria Gonzalez's house, located in the Parkwood subdivision, was burglarized on May 21, 1990. Upon arriving at her home, she noticed that her front doorknob was hanging loosely from the door. She reported the burglary to the police and gave them a list of the stolen items. Gonzalez never did recover any of her property. A few days prior to the burglary, Gonzalez was mowing her front lawn when she observed a man, whom she had never seen before, pass by on a bicycle. She stated that he gazed at each house as he rode down the street. At trial, Gonzalez identified the man as appellant.

The police suspected that Ashcraft had been burglarizing the houses in the Parkwood subdivision in order to support his drug habit. On June 23, 1991, police officers obtained a warrant to search Ashcraft's residence and to seize heroin, cocaine, and stolen property. In executing the search warrant, the officers seized heroin and seventy-seven items of property reported stolen, including televisions, VCR's, microwave ovens, and Nintendo games. Gonzalez did not identify any of these items as hers.

The police arrested Ashcraft and took him back to the police station. After the police informed appellant of his *Miranda*[1] rights, appellant confessed that he had committed several burglaries in the Parkwood subdivision over the past year to year and a half. Ashcraft listed the addresses of seventeen houses in that neighborhood that he had burglarized. This list included the address of 1601 Little Creek which was Gonzalez's residence in May 1990.

Ashcraft was tried and found guilty of burglary of a habitation. The trial court assessed punishment at seventy-five years in prison. Ashcraft appeals from this conviction.

By point one, appellant asserts that the admission of his confession into evidence violated his right under the Fourth Amendment of the United States Constitution and Article I, § 9 of the Texas Constitution.[2] Appellant argues that his two confessions were involuntary because: 1) he did not waive his right to an attorney since he did not initial that part of the waiver; 2) his confessions were made on the basis of threats and promises made by the police; and 3) he was medicated at the time the statements were made.

Detective Araiza testified that upon arriving at appellant's house, he showed appellant the search warrant, arrested him, and informed him of his *Miranda* rights. The detective then asked appellant where he kept the heroin and stolen property. Araiza stated that he neither threatened appellant nor did he threaten to jail appellant's mother. Araiza did tell appellant that his mother could be held accountable for any stolen property found at the house. By this statement, Araiza testified that he was suggesting that if the officers were to find the stolen property without appellant's cooperation, then appellant's mother could be held accountable for the stolen property. According to Araiza, it is normal police procedure to inform the occupants of the house that anyone in the house can be held responsible for drugs or stolen property found. Appellant then showed the officers where the drugs and stolen items were.

At the police station, the officers again read appellant his rights, and he stated that he understood his rights. Thereupon, he initialed and signed the statement waiving his rights and confessed to the burglaries in

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. When appellate courts are asked to determine whether the trial court erred in overruling a pretrial motion, the general rule is that we consider only the evidence adduced at the hearing on that motion and not the testimony subsequently elicited at trial because the ruling in issue was not based on the latter. *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App.

1984). However, where the point of error complains of the admission of evidence at trial, and the issue has been consensually relitigated by the parties during trial on the merits, consideration of the relevant trial testimony is appropriate. *Id.; see also Webb v. State*, 760 S.W.2d 263, 272 n. 13 (Tex.Crim.App.1988). Thus, we will consider the evidence adduced at the pretrial hearing and at trial.

the Parkwood neighborhood. However, no initials appear beside that portion of the statement waiving his right to have a lawyer present during questioning. Nevertheless, appellant did not ask for an attorney to be present while he was interviewed. Araiza testified that he made no promise to appellant nor did he use force or coercion to obtain the confession.

Before appellant gave his statement, he told Araiza that he was a heroin addict and that he had used some earlier in the morning. During the interview, appellant told the officers that he anticipated experiencing withdrawal symptoms; however, the officers observed no signs of withdrawal. Appellant also complained of back pain and, towards the end of his statement, requested Tylenol 3 with codeine. Officer Byrum stated that appellant asked for the medication, and Byrum said he would get it. He did not promise to get the medication for appellant only if appellant finished making the statement. Appellant received no medication until after he gave his statement. Byrum retrieved appellant's prescribed medicine from his home and gave appellant the pills as prescribed. According to the policy of the Harlingen Police Department, inmates may be given prescribed medication while they are in jail.

The next day, appellant was given the medication at 9:00 a.m., 12:00 p.m., and 4:00 p.m. Appellant was arraigned on this day. At his arraignment, Andres Hernandez, another person being arraigned that day, testified that appellant "looked all strung out" and that he looked drunk or on downers or pills. After the arraignment, appellant volunteered to be taken to the Parkwood neighborhood where he would point out the houses he had burglarized. During the ride, appellant said that he was sick and experiencing withdrawal symptoms, but Byrum testified that appellant did not exhibit any symptoms. Araiza stated that Byrum gave appellant some of the said medication during the ride.

Upon their return to the station after the ride, appellant gave a second statement. Again, the officers read appellant his *Miranda* rights, and appellant initialed and signed the document waiving his rights. The time given in the second statement reflects that it was made at 12:00 p.m., which is the time that appellant received his medication. Araiza stated that appellant received no medication during the making of the statement and that he observed no signs of withdrawal prior to or during the statement. The contents of the second statement consisted of a list of addresses of houses that appellant had identified as houses he had burglarized.

Araiza testified that throughout the interviews, appellant appeared normal and coherent and spoke in a clear voice. Araiza further stated that appellant was in a good mood and joked with the officers. Appellant wanted to talk about the burglaries and said he was glad it was all over. Araiza believed that appellant understood what his rights were and that he voluntarily relinquished those rights.

To meet constitutional standards, a confession must be both voluntary and taken in compliance with *Miranda*. *Martinez v. State*, 645 S.W.2d 322, 324 (Tex.App.—Corpus Christi 1982, no pet.). The determination of whether a confession is voluntary must be based on the totality of circumstances surrounding its acquisition. *McCoy v. State*, 713 S.W.2d 940, 955 (Tex.Crim.App. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). When a question is raised as to the voluntariness of a statement of an accused, the trial court must hold a hearing outside the presence of the jury to determine if the accused made the statement freely and voluntarily. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979).

The state bears the burden of proof to show that the statement was voluntary. *Gentry v. State*, 770 S.W.2d 780, 789 (Tex. Crim.App.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989). The state must satisfactorily explain the accused's allegations of coercion in order to satisfy its burden of proof. *Farr v. State*, 519 S.W.2d 876, 880 (Tex.Crim.App.1975). The state need not rebut appellant's assertions; it only needs to controvert them. *Muniz v. State*, 851 S.W.2d 238, 252 (Tex. Crim.App.1993).

With controverted evidence, the trial court is the sole trier of facts and the exclu-

sive judge of the credibility of the witnesses and of the weight to be given their testimony. *Id.; Jacobs v. State,* 787 S.W.2d 397, 400 (Tex.Crim.App.1990); *McCoy,* 713 S.W.2d at 955. The trial court can reject or accept the witnesses' testimony. *Kelly v. State,* 621 S.W.2d 176, 179 (Tex.Crim.App.1981). This Court's review of the trial court's findings is limited to a determination of whether the trial court abused its discretion. *Id.; Garcia v. State,* 829 S.W.2d 830, 833 (Tex.App.— Dallas 1992, pet. ref'd). If the trial court's resolution on the controverted issue of the voluntariness of a confession is supported by the evidence, we will not disturb the trial court's decision. *Muniz,* 851 S.W.2d at 252.

### A. Right to Counsel

■ Appellant contends that his confession should have been suppressed because of an invalid waiver of his right to counsel. A defendant may waive his *Miranda* rights provided the waiver is made voluntarily, knowingly, and intelligently. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). Only if the totality of circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Moran,* 475 U.S. at 421, 106 S.Ct. at 1141.

■ The State presented witnesses who testified that police officers, on numerous occasions, warned appellant of his right to counsel and right to remain silent. There is no evidence in the record showing that appellant ever invoked his right to counsel. The testimony demonstrated that appellant was not confused or under duress when the warnings were given. Contrarily, appellant joked with the officers, stated that he understood his rights, and was eager to talk about the burglaries. While defendant's signing of a prepared statement which included pre-printed averments indicating that the signer understood his rights and freely waived them is not determinative of the question of affirmative waiver, it is significant evidence. *Martinez,* 645 S.W.2d at 323. Additionally, ap-

pellant's argument that his failure to initial the portion of the waiver relating to right to counsel is analogous to the argument rejected by the court in *Jacobs v. State,* 787 S.W.2d 397 (Tex.Crim.App.1990).

In *Jacobs,* appellant contended that his refusal to sign the bottom of the magistrate warning form creates a reasonable presumption that appellant did not intend to waive his right to counsel or talk to officers without counsel being present. The court stated that appellant presented no caselaw to support the theory that such a refusal invoked his Fifth Amendment right to counsel. *Jacobs,* 787 S.W.2d at 401.

Ashcraft made two different statements. In his first statement, he did not initial the right to counsel portion of the statement. In his second statement, he initialed all of the subparts. Although he may have failed to initial the portion at issue, he did in fact initial the portion that averred that he understood *"all* of my rights as stated above," which included the right to counsel, and that he voluntarily waived them. (emphasis added). There is no evidence in the record to show that appellant ever invoked his right to an attorney. Moreover, pursuant to *Jacobs,* we rule that appellant's failure to initial the right-to-counsel part of the statement was not an invocation of that right. Thus, the trial court did not abuse his discretion in finding that the confession was taken in compliance with *Miranda.*

### B. Inducement, Force, or Coercion

Appellant next asserts that the trial court should have suppressed the confessions because the police threatened and coerced him into confessing by threatening to jail his mother and withholding medication until appellant confessed. Appellant also suggests that he could not have knowingly, intelligently, and voluntarily confessed since he was under the influence of a narcotic and/or the medication.

■ In determining whether a confession was improperly obtained based on the ground that it was induced by the promise of some benefit to defendant, such promise must be 1) positive, 2) made or sanctioned by

a person in authority, and 3) of such character as would be likely to influence the defendant to speak untruthfully. *Jacobs,* 787 S.W.2d at 399; *Fisher v. State,* 379 S.W.2d 900, 902 (Tex.Crim.App.1964). Ashcraft claimed that Detective Araiza threatened to arrest his mother and promised not to arrest her if he cooperated. The testimony of appellant's mother reflected his claim. The State presented Araiza's testimony in which he stated that he made no threats or promises and that no force or coercion was used. Araiza did tell appellant that his mother could be held accountable for any stolen property found on the premises. Araiza further testified that it was normal police procedure to tell the occupants of the house that they can be held responsible. Araiza also told appellant that "it would be easier if he cooperated and let us know where he had the drugs in the house." Appellant cooperated and led the police to the drugs and stolen property because he did not want his mother involved. Prior to appellant's first confession, Araiza asked him if he understood that his mother might be held accountable, and appellant said he understood.

Araiza's statements concerning appellant's mother are simply statements of fact. It is normal police policy to so inform the occupants of the house. We hold that appellant failed to demonstrate the party in authority made a positive and unequivocal promise not to jail appellant's mother in return for his confession.

Appellant's second inducement argument is based on his claim that an officer promised to get him medication as soon as he finished the confession. Appellant complained of back pain during his first confession and requested his medication which was Tylenol 3 with codeine. Officer Byrum said that he would get the medicine for him. Byrum averred that he did not promise to procure the medication provided appellant finished the confession. Appellant received the medication later that evening after Byrum retrieved it from appellant's house. Again, appellant failed to show that the police positively and unequivocally promised medication in return for a confession.

We now address appellant's assertion that his confessions were involuntary since he was under the influence of heroin and/or the codeine medication. Appellant had taken heroin the morning of his arrest. Later that evening, during his first confession, appellant said he anticipated experiencing withdrawal symptoms but the officers observed none. The next day, June 24, appellant received his medicine per prescription at 12:00 a.m., 4:50 a.m., 9:00 a.m., 12:00 p.m., and 4:00 p.m. Appellant was arraigned the morning of June 24. Hernandez, also being arraigned, testified that Ashcraft looked high and strung out. During his ride through the neighborhood later that morning, appellant said he was experiencing withdrawal symptoms but, again, the officers observed none. Araiza mentioned that he believed Byrum gave appellant some medication during the ride. Upon returning to the station, appellant made his second confession at 12:00 p.m., the same time he had received his medication.

Araiza testified that appellant received no medication during the making of the second confession. Araiza did not observe appellant exhibiting any withdrawal symptoms prior to or during the second statement. Byrum stated that he was familiar with some symptoms that heroin addicts experience during withdrawal such as shakiness and getting horribly sick. According to Byrum, appellant did not show these signs, rather he appeared normal and coherent. The officers consistently testified that appellant seemed normal and coherent and understood the proceedings. Appellant wanted to talk about the burglaries and volunteered to show them the houses he had burglarized.

The State's evidence contradicted appellant's assertions. The trial judge was the sole judge of the credibility of the witnesses at the hearing on the voluntariness of the confession. Because there is evidence in the record to support the trial court's finding that the confession was freely and voluntarily given, we cannot rule that the trial court abused its discretion. We hold that the trial court did not err in denying appellant's motion to suppress the confessions and overrule appellant's point one.

By point two, appellant argues that the search warrant was not based upon probable cause, that the warrant does not meet constitutional standards because it is a global warrant, that the evidence seized was the result of an illegal search, and that the trial court erred in admitting that evidence. Appellant contends that probable cause is lacking because the warrant's supporting affidavit, based upon information gained by informant hearsay and by police observation, fails to establish the informants' credibility, reliability, and basis of knowledge.

▮ A warrant may issue for the police to search a certain place and seize certain items only if supported by an affidavit showing facts and circumstances within the affiant's knowledge that would warrant a person of reasonable caution to believe that a specific offense has been committed and that property resulting from or evidencing the offense is located at the particular place to be searched. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX.CODE CRIM.PROC.ANN. arts. 18.01(b), (c) and 18.02(1), (7) (Vernon 1977 & Supp.1995); *see also Berger v. New York,* 388 U.S. 41, 55–56, 87 S.Ct. 1873, 1881–82, 18 L.Ed.2d 1040 (1967). The existence of probable cause is determined upon "sufficient and substantial facts," based upon a practical common sense consideration of the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230, 238–39, 103 S.Ct. 2317, 2328, 2332–33, 76 L.Ed.2d 527 (1983); *Johnson v. State,* 803 S.W.2d 272, 289 (Tex.Crim.App. 1990); *Mason v. State,* 838 S.W.2d 657, 659–60 (Tex.App.—Corpus Christi 1992, pet. ref'd). Credibility, reliability, and basis of knowledge no longer need to be established by separate and independent facts. However, they remain highly relevant factors in determining, by the totality of the circumstances, whether probable cause exists. *Eisenhauer v. State,* 754 S.W.2d 159, 164 (Tex. Crim.App.1988), *cert. denied,* 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988); *Morin v. State,* 800 S.W.2d 328, 329 (Tex.App.— Corpus Christi 1990, no pet.); *Dees v. State,* 722 S.W.2d 209, 215 (Tex.App.—Corpus Christi 1986, pet. ref'd). We do not engage in a *de novo* review of the affidavit's sufficiency. We give the magistrate's determination great deference. *Johnson,* 803 S.W.2d

at 289. The adequacy of the affidavit is determined by the information contained within its four corners. *Cerda v. State,* 846 S.W.2d 533, 535 (Tex.App.—Corpus Christi 1993, no pet.).

Here, the officers secured their search warrant on the strength of the following affidavit:

On June 23, 1991 about 3:30 p.m. Detective John Byrum and Detective Nicholas Araiza were on surveillance of a suspected drug dealer residing at 1710 South Parkwood, Harlingen, Texas. Affiant has received reliable information from several informants[,] and the information obtained appeared to be in accordance with what information affiant was already aware of. The information received was that the suspect, Jon Ashcraft[,] was selling heroin to heroin addicts at the residence located at 1710 South Parkwood[,] Harlingen, Texas. The suspect was also known to be involved in burglaries of residences in the area known as the Parkwood Subdivision in Harlingen, Texas. On this particular day affiant and Detective John Byrum set up surveillance of the residence at 1710 South Parkwood[,] Harlingen, Texas. Affiant and Detective Byrum observed a yellow Nissan truck with two passengers arrive at the residence at 1710 South Parkwood. The male and female passengers were waiting around a carport for about 15 minutes until the suspect John Ashcraft came out of the house. The three appeared to be in the process of making a drug deal as is common practice with drug dealers and users. The couple left right after an apparent exchange and were later stopped by a Harlingen police unit away from the suspect's residence. The couple was identified as Augustin Pena and Juanita Torres of San Benito. The couple gave voluntary statements after being warned of their constitutional rights. Information obtained from the couple verified that heroin was being sold by John Ashcraft at his residence at 1710 South Parkwood[,] Harlingen, Texas.

### A. Probable Cause—Heroin

▮ Appellant complains that probable cause is not established because the in-

formants' reliability, credibility, and basis of knowledge are not established. He claims that the statements of reliability are wholly conclusory and do not support a finding of probable cause. When information is supplied by informants, the totality of circumstances outlined in the affidavit must establish probable cause. *Gates,* 462 U.S. at 232–38, 103 S.Ct. at 2329–32; *Cassias v. State,* 719 S.W.2d 585, 588 (Tex.Crim.App.1986); *Dees,* 722 S.W.2d at 215. While probable cause may be based upon hearsay, the hearsay must be credited at each level in order to meet constitutional requirements. *Hennessy v. State,* 660 S.W.2d 87, 91 (Tex.Crim.App. 1983). Informant hearsay may be credited by showing that the informant has given reliable, credible information in the past, or by police corroboration. *Cerda,* 846 S.W.2d at 535; *see also Polanco v. State,* 475 S.W.2d 763, 766 (Tex.Crim.App.1971). Here, the affiant officer made no attempt to identify the informant or to demonstrate the reliability, credibility, or basis of the informant's knowledge. However, the police may corroborate informant hearsay by their own surveillance. *Polanco,* 475 S.W.2d at 766.

■ Based upon the hearsay information, Officers Araiza and Byrum became suspicious of appellant for heroin dealing. They began watching appellant's house for more indicia of such criminal involvement. The magistrate is entitled to rely upon information supplied by the police officers' own observations and upon information supplied by fellow officers engaged in a common investigation. *Johnson,* 803 S.W.2d at 289. In Texas, the affidavit must be more than a "mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Id.* at 288. The magistrate must not be asked merely to ratify the bare conclusions of others. *Id.*

Here, affiant's statements that "the three appeared to be in the process of making a drug deal as is common practice with drug dealers and users" and that "the couple left after an apparent exchange," are too conclusory by themselves to establish probable cause. However, at least one Texas case has held that a similar statement—"[the officer]

observed the appellee engaged in a narcotics transaction"—was sufficient when accompanied by other credible, reliable information. *See State v. Cantu,* 785 S.W.2d 181, 184–85 (Tex.App.—Houston [14th Dist.] 1990, no pet.). We therefore examine the adequacy of other information in this affidavit for corroboration of the officers' observations. An informant's declarations against the informant's own penal interest may be used to corroborate the reliability of information in an affidavit. *See Abercrombie v. State,* 528 S.W.2d 578, 583–585 (Tex.Crim.App.1974) (opinion on reh'g) (where search warrant affidavit revealed that unnamed informer made a declaration against penal interest, the affidavit sufficiently established the reliability and credibility of the informer). Araiza's affidavit says that the couple in the truck was stopped, given constitutional warnings, and gave statements confirming police suspicions that a drug transaction had occurred. The magistrate is authorized to make reasonable inferences from the facts stated in the affidavit. *Gibbs v. State,* 819 S.W.2d 821, 830 (Tex.Crim.App.1991), *cert. denied,* 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992); *Hennessy,* 660 S.W.2d at 90. We hold that the magistrate could reasonably have concluded that the couple admitted to purchasing heroin from appellant. Such admissions by the couple were declarations against their own penal interests which may be used to corroborate the reliability of information in the search warrant affidavit. Accordingly, we conclude that, based upon the totality of circumstances outlined within the four corners of the affidavit, the magistrate had a substantial basis to believe that appellant sold the couple heroin and that more of the drug could be found at his house. Probable cause existed with regard to heroin dealing because the police observations were corroborated by the couple's declarations against penal interest.

**B. Probable Cause—Local Burglaries**

■ The search warrant authorized not only the seizure of heroin and cocaine, but also of stolen property connected with the local burglary ring. However, we find no facts set forth in the affidavit which substantiate a finding of probable cause regarding

burglary.[3] The affidavit states that "several informants" gave "reliable information" about heroin sales. The document then states that appellant "was known to be involved in burglaries." Nothing in the affidavit suggests the source or the reliability of the burglary information. *See Powers v. State,* 456 S.W.2d 97, 98 (Tex.Crim.App. 1970). The affidavit's language does not logically allow an inference that the informants supplying information about heroin were also those who told the police about appellant's burglary involvement. Nor does the affidavit indicate any clear connection between the heroin dealing and the burglaries. Without such a connection, the reliability of the heroin tip cannot lend support to the burglary tip. Assuming that the statement "appellant was also known to be involved in burglaries" was a statement within the affiant's personal knowledge, it is conclusory and insufficient to establish probable cause. *See Gates,* 462 U.S. at 239, 103 S.Ct. at 2332–33. Nothing in the affidavit provides the magistrate with a substantial basis for determining that probable cause existed for appellant's involvement in the burglaries or that the stolen property would be at his residence. *Id.* If the above-quoted statement is based upon informant hearsay, nothing within the four corners of the affidavit establishes the reliability and credibility of the informant, or informants, linking appellant to the burglaries. Nor does the affidavit state why the officers believed such information. No time frame is referenced regarding appellant's burglary involvement, and the police provide no corroboration for the burglary suspicions by any statement of their own observations or investigations. Therefore, the affidavit fails to set forth facts sufficient to support the probable cause finding for stolen property. As such, no valid search warrant existed with respect to the stolen property, although the warrant was valid as to heroin and cocaine. *Cf. Oubre v. State,* 542 S.W.2d 875, 877 (Tex.Crim.App. 1976).

However, a defect in the warrant does not render the warrant invalid as a whole. *Walthall v. State,* 594 S.W.2d 74, 79 (Tex.Crim.App.1980); *Dowler v. State,* 777 S.W.2d 444, 449 (Tex.App.—El Paso 1989, pet. ref'd). The invalid portion of the warrant can be severed from the valid portion. *Walthall,* 594 S.W.2d at 79. A warrant that is valid in part is sufficient in allowing the lawful entry of the police to execute the warrant. *Id.*

The search warrant for drugs permitted the officers to lawfully enter appellant's home that he shared with his mother. The police testified that when they arrived at appellant's house, they immediately placed him under arrest, informed him they had a warrant to search the premises, and gave him *Miranda* warnings. Araiza testified that appellant acknowledged that he understood his rights. Araiza then asked appellant where he kept the heroin and "stolen property that he might have." Appellant cooperated and showed the officers where he kept the heroin and stolen property. Following appellant's directions, the officers found the heroin in a film canister, a computer under the bed, a shotgun in the closet, and a television set in a storage shed behind the house. Additionally, Araiza testified that many of the stolen items were "out in the open."

There is conflicting testimony as to whether appellant cooperated because the police threatened to jail his mother. We have already held that the police followed normal procedure by informing the occupants that they may be held accountable for any drugs or stolen property found on the premises. Such a statement does not constitute a threat or coercion. Thus, the police were legally on the premises, appellant received *Miranda* warnings, the police neither threatened nor coerced appellant to answer their questions, and, yet, appellant chose to volunteer information as to the locations of the heroin and stolen property. In this case, the evidence

---

**3.** We previously addressed the issue of probable cause for burglary in an unpublished opinion, *Ashcraft v. State,* No. 13–92–264–CR (Tex.App.—Corpus Christi, August 31, 1994). The Court of Criminal Appeals, in an unpublished per curiam opinion No. 1182–94, reversed and remanded that case to this Court to consider 1) whether the State sufficiently established probable cause as to the heroin portion of the search warrant and 2) whether the invalid portion of the search warrant could be severed from the valid portion. We also address these issues in the present case.

resulting from the search was testimony regarding the return on the search warrant which included a list of the stolen items recovered from appellant's house. Appellant's two confessions were also admitted into evidence. We find that the evidence procured as a result of this search is admissible. We overrule appellant's point two.

By point three, appellant argues that the trial court erred in overruling his motion for continuance since his attorney was appointed within ten days of trial, and appellant did not waive the ten day preparation period required by article 1.051(e) of the Texas Code of Criminal Procedure.

▬ The failure to comply with article 1.051(e) may be raised for the first time on appeal. *Marin v. State*, 851 S.W.2d 275, 280 (Tex.Crim.App.1993). Additionally, a violation of said article is not subject to a harm analysis. *Id.* at 281.

Article 1.051(e) provides in relevant part that

[a]n appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court.

TEX.CODE CRIM.PROC.ANN. art. 1.051(e) (Vernon Supp.1995). The purpose of the provision is to protect an indigent defendant's right to have appointed counsel who has adequate time to prepare a defense for trial. *Marin v. State*, 891 S.W.2d 267, 272 (Tex.Crim.App.1994); *Moore v. State*, 493 S.W.2d 844, 845 (Tex.Crim.App.1973); *Meeks v. State*, 456 S.W.2d 938, 939 (Tex.Crim.App.1970). "It is the actual preparation time, not the time of formal appointment, that determines whether a defendant has been given the mandatory preparation time for trial provided by the statute." *Henson v. State*, 530 S.W.2d 584, 585 (Tex.Crim.App.1975); *see also Marin*, 891 S.W.2d at 272; *Lujan v. State*, 626 S.W.2d 854, 863 (Tex.App.—San Antonio 1982, pet. ref'd).

▬ The facts in the present case are quite similar to those in *Meeks*. In *Meeks*, the defendant originally retained counsel three months prior to trial, during which time counsel actively prepared for trial.

However, within ten days of trial, counsel attempted to withdraw because defendant had not paid counsel for his services. The trial judge denied the request to withdraw and, instead, appointed counsel to represent the defendant. *Meeks*, 456 S.W.2d at 939. The Court of Criminal Appeals held thus:

The purpose of Article 26.04(b) V.A.C.C.P. [now art. 1.051(e) ] is clearly to guarantee to an indigent accused that he and his court appointed attorney will have a reasonable time in which they can prepare a defense. In the present case, it is clear from the record that appellant's counsel had three months in which to prepare for trial. Appointment of counsel here was to allow payment to the lawyer for his services, and no error is presented by the action of the trial judge.

*Id.*

In the present case, appellant has numerous burglary charges pending. The charges stem from the police's recovery of stolen property from his residence. Appellant retained counsel to represent him in one case with the cause number 91–CR–1371–E. Counsel tried that case. Counsel also "signed on" to appear for appellant in eight other cases, including the present case, when he agreed to meet with the State to discuss a plea bargain as to those eight cases. The record shows that counsel appeared as appellant's attorney of record when appellant originally pleaded guilty on January 14, 1992. Counsel filed motions to suppress and appeared at the hearing on those motions on March 2, 1992, three months before trial. On June 17, 1992, five days before trial, counsel attempted to withdraw, citing conflicts with appellant and counsel's personal financial difficulties if he were to continue to represent appellant. The trial judge found that appellant originally retained counsel but could no longer pay for his services; therefore, the judge appointed counsel to represent appellant at the State's expense so that he could continue to represent appellant.

Following the established caselaw, we will focus on the actual preparation time and not the time of formal appointment in determining whether appellant was given the mandatory preparation time for trial. Appellant

originally retained counsel who agreed to appear as appellant's attorney in the present case and other pending cases. In the months before trial, counsel had filed motions and appeared at hearings as attorney of record for appellant. Furthermore, counsel was well acquainted with the issues and facts of the case, having already tried, on appellant's behalf, one of several burglary cases arising from the search warrant at issue. It is clear from the record that counsel had months in which to prepare for trial. As in *Meeks,* appointment of counsel here was to allow payment to counsel for his services. Because appellant was represented by an attorney who was afforded the statutory preparation time, we find that the trial judge complied with article 1.051(e) and did not err in denying appellant's motion for continuance. Accordingly, we overrule point three.

By point four, appellant asserts that he is entitled to be served with an indictment and to ten days, after service of the indictment, to prepare and file written pleadings. Appellant complained to the trial court that he had neither been served with an indictment nor arraigned. Consequently, appellant contends that the trial court failed to comply with articles 27.11 and 27.12 of the Texas Code of Criminal Procedure and the Sixth Amendment's fair trial provision by not giving him ten days, after service of an indictment, to file pleadings.

■ Where a defendant is entitled to be served with a copy of the indictment, he shall be allowed ten days in which to file written pleadings after such service. *See* TEX.CODE CRIM.PROC.ANN. arts. 27.11 and 27.12 (Vernon 1989). The purpose of the "right to time" statute is to afford the accused or his counsel a right to carefully examine the formal accusation and to prepare and file any necessary pleadings pertaining thereto. *Oliver v. State,* 646 S.W.2d 242, 245 (Tex.Crim.App. 1983). When timely and properly invoked, the statutory ten days must be afforded the accused. *Id.* Refusal to grant such time will result in reversible error, and the defendant need not show harm. *Id.*

■ A defendant who enters a plea of guilty before the trial judge waives the requirement providing for a copy of the indict-

ment to be served upon him before trial. *Broyles v. State,* 143 Tex.Crim. 556, 159 S.W.2d 881, 882 (App.1942) (case decided under former statute requiring two days rather than the present ten days service of indictment prior to trial). Moreover, when a defendant, represented by counsel, enters his plea to the indictment, he waives his right to an arraignment. *Richardson v. State,* 508 S.W.2d 380, 381 (Tex.Crim.App.1974). Defendant's plea to the indictment negates the purpose of an arraignment which is to determine the identity and plea of the accused. *Id.; see* TEX.CODE CRIM.PROC.ANN. art. 26.02 (Vernon 1989).

■ An indictment was filed on December 18, 1991. On January 14, 1992, appellant appeared with his counsel and signed a document "waiv[ing] all formalities of arraignment and reading of the indictment and voluntarily and freely pleads Guilty, as charged in the indictment in this cause." A month later, on February 14, 1992, the court allowed appellant to withdraw his guilty plea. However, having entered a plea to the indictment and waiving arraignment and reading of the indictment, appellant cannot now complain that he has not been served with an indictment or arraigned. The record shows that appellant filed motions to suppress on February 25, 1992 and appeared at hearings on these motions on March 2, 1992. Thus, appellant had time to prepare and file any necessary pleadings pertaining to his defense. Additionally, in entering his initial plea, appellant and his counsel were afforded the right to carefully examine the formal accusation along with the court's explanation that appellant is charged under the indictment with burglary of a habitation and the range of punishment prescribed for such an offense. Thus, the objectives of an arraignment and the "right to time" statute had been achieved. Appellant's complaint that he had not been served with an indictment and formally arraigned is without merit. We overrule appellant's point four.

■ By point seven, appellant asserts that he was denied his right to a fair trial under the Sixth Amendment because the trial court erred in denying his motion to shuf-

fle the jury. The record shows that appellant filed a pro se motion to shuffle the jury on June 22, 1992, the same day as voir dire examination. The court ruled that it was not made aware of this and other pro se motions and that they were untimely filed. As we have already discussed above, appellant had retained counsel to represent him, and said counsel was also appointed as his attorney on June 17, 1992 when the court declared appellant an indigent.

It is not error for a court to overrule an appellant's pro se motion that was filed when he was represented by counsel. *Busselman v. State,* 713 S.W.2d 711, 714 (Tex.App.—Houston [1st Dist.] 1986, no pet.). An accused has no constitutional right to hybrid representation of partially pro se and partially by counsel. *Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App.1989); *Landers v. State,* 550 S.W.2d 272, 275 (Tex.Crim.App. 1977) (opinion on reh'g). Once an appellant has retained an attorney, the court is entitled to look solely to the attorney and is not required to consider pro se motions. *Busselman,* 713 S.W.2d at 714. *Busselman* held that because appellant had counsel and therefore no right to urge his pro se motion, the trial court did not err by denying the motion. *Id. See also Hall v. State,* 685 S.W.2d 435, 437 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd) (pro se motion not duly and properly presented for trial court's action because it was filed by appellant while he was represented by appointed counsel).

Because appellant was represented by counsel at the time he filed his pro se motions, appellant had no right to urge his pro se motions. The trial court was not made aware of the motions, was not required to consider them, and therefore did not err in denying the motions. We overrule appellant's point seven.

■■■ In his fifth point of error, appellant complains of the trial court's refusal to quash the entire jury panel after one of the venire members said, "I probably would have a hard time with Mr. Ashcraft because he did break into my home and he was—I did not see it, personally, but the neighbor saw him personally go away with the evidence there." The State continued its voir dire of another venire member before appellant's attorney objected to the statement as being prejudicial and requested that the jury panel be quashed. The trial court denied the request.

In *Johnson v. State,* 151 Tex.Crim. 110, 205 S.W.2d 773, 774–75 (App.1947), a case involving a prejudicial statement made before the jury panel by a prospective juror, the Court of Criminal Appeals held that the defendant, in order to show harm after his motion to discharge the panel was denied, would have to meet the following criteria:

> It occurs to us that there is no error shown by the court's ruling because, (a) it is not made to appear that any of the other members of the jury panel heard the remark, (b) that if they did hear it, they were influenced thereby to the prejudice of appellant, (c) that the juror in question nor any other juror who may have had a similar opinion was forced upon appellant. In the absence of which no injury to him is shown.

*Id. See Callins v. State,* 780 S.W.2d 176, 188 (Tex.Crim.App.1986); *Freeman v. State,* 556 S.W.2d 287, 308 (Tex.Crim.App.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978); *Nelson v. State,* 881 S.W.2d 97, 101 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Zuniga v. State,* 635 S.W.2d 780, 783 (Tex.App.—Corpus Christi 1982, pet. ref'd) (no harm shown where record reflects no showing that prospective juror's remark was actually heard by any other members of jury panel, or, if any did hear it, that they were influenced thereby to appellant's prejudice).

The venireman made the remark in the presence of the other members of the panel. However, appellant points to no place in the record demonstrating that other venire members actually heard the remark. Nevertheless, even if the actual jury members did hear the remark, there is no indication that they were influenced by it to the prejudice of appellant. Moreover, appellant has failed to show that the venireman in question or any other venire members who may have had a similar opinion was forced upon him. In fact, the venireman who made the remark was not selected to the jury. In the absence of such

evidence, no prejudice is shown. We overrule appellant's point five.

■ By point six, appellant maintains that the trial court erred in not granting his motion for a mistrial after the State mentioned the enhanced portion of the indictment to the jury panel during voir dire. Appellant urges the State's remark was inherently prejudicial and inflammatory. Specifically, appellant complains of the following statement by the State:

> Now, the punishment range in this case normally would be 5 years to 99 years, okay? However, we have an enhancement count, which means that we are going to bring evidence to show that the defendant has served—

After a bench discussion off the record, the court sustained appellant's objection to the State's mentioning of the enhancement count at this stage of the trial, but the court overruled appellant's request for a mistrial. We note appellant never requested an instruction to disregard which we conclude would have been sufficient to cure any error. *See Washington v. State*, 484 S.W.2d 721, 723–24 (Tex. Crim.App.1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1555, 36 L.Ed.2d 314 (1973); *Hunter v. State*, 468 S.W.2d 96, 101 (Tex.Crim.App. 1971) (no reversible error found where appellant failed to request jury instruction to disregard but court sustained objection and overruled motion for mistrial); *Holloway v. State*, 695 S.W.2d 112, 120 (Tex.App.—Fort Worth 1985), *aff'd*, 751 S.W.2d 866 (Tex. Crim.App.1988).

Nevertheless, even if appellant had preserved his error, the complained of voir dire of the jury was not error. The State cannot read the enhancement portion of the indictment before the punishment hearing. TEX. CODE OF CRIM.PROC.ANN. art. 36.01(a)(1) (Vernon Supp.1995). Neither can the State give the specifics of the prior offenses as this is tantamount to reading the allegations. *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim.App.1982); *Holloway*, 695 S.W.2d at 120 (State is entitled to voir dire jury on enhancement paragraphs as long as it does not inform prospective jurors of defendant's prior conviction).

The State informed the panel that there is an enhancement count but did not identify the specific allegation in the enhancement paragraph of appellant's indictment. The State started to discuss the legal effects of prior offenses but never got that far because the trial court sustained appellant's objection to the statement. Appellant's point of error six is overruled.

By his eighth point of error, appellant asserts that the trial court erred in denying his request for an instructed verdict of acquittal at the close of the State's evidence. Appellant argues there was insufficient evidence to support the conviction since the only evidence offered to prove that he had committed the burglary was his confession. Appellant contends that absent any evidence to corroborate the confession, the confession, standing alone, is insufficient to support a conviction.

■ A challenge to the trial court's ruling on a motion for an instructed verdict is a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling appellant's motion. *Id.*

■ When reviewing the sufficiency of the evidence, we must view the entire body of evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found all of the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783–84, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 157 (Tex.Crim.App.1991); *Granados v. State*, 843 S.W.2d 736, 738 (Tex. App.—Corpus Christi 1992, no pet.). The same standard of review applies to both direct and circumstantial evidence cases. *Garcia v. State*, 840 S.W.2d 957, 958 (Tex.Crim. App.1992); *Geesa*, 820 S.W.2d at 159.

■ An extrajudicial confession alone is not sufficient to support a conviction; there must be independent evidence of the corpus delicti. *Emery v. State*, 881 S.W.2d 702, 705

(Tex.Crim.App.1994); *Soffar v. State,* 742 S.W.2d 371, 375 (Tex.Crim.App.1987). Unless there is other evidence which, taken with the defendant's statement, establishes beyond a reasonable doubt the guilt of the defendant, this Court will hold that the evidence is insufficient. *Soffar,* 742 S.W.2d at 375.

Corpus delicti means proof of the fact that the crime charged has been committed by someone. *Bridges v. State,* 172 Tex. Crim. 655, 362 S.W.2d 336, 337 (App.1962); *Watson v. State,* 154 Tex.Crim. 438, 227 S.W.2d 559, 562 (App.1950); *Troncosa v. State,* 670 S.W.2d 671, 680 (Tex.App.—San Antonio 1984, no pet.). Proof of the defendant's connection with such crime is not part of the corpus delicti. *Troncosa,* 670 S.W.2d at 680; *see also Emery,* 881 S.W.2d at 705 (independent evidence need not connect defendant to the crime; it need only show that crime was committed). When it is shown that the charged offense is committed by someone, the accused's confession that he committed the offense is sufficient. *McDaniel v. State,* 144 Tex.Crim. 168, 161 S.W.2d 1064, 1065 (App.1942).

A person commits burglary of a habitation if, without the effective consent of the owner, he enters a habitation not then open to the public, with intent to commit a felony or theft. TEX. PENAL CODE ANN. § 30.02(a) (Vernon 1994). The corpus delicti of burglary can be established by showing that the owner of the habitation did not consent to the entry. *See Emery,* 881 S.W.2d at 705; *Gibbs v. State,* 819 S.W.2d 821, 834 (Tex.Crim.App. 1991).

The State introduced appellant's confession along with other testimonial evidence to establish burglary of Gloria Gonzalez's habitation. Gonzalez testified that she was not acquainted with appellant. Two days before the burglary, Gonzalez saw a man she had never seen before, later identified as appellant, ride by her house on a bicycle. She noticed that "he was turning to look at every single house" as he rode down the street. She further testified that her house was burglarized two days after this incident. On the day of the offense, she came home and noticed that the front door knob had been "dislocated from its set place ... [and] hanging loosely," and items had been taken. Gonzalez stated that she had never permitted appellant to enter her house either prior to or on May 21, 1990, the date of the burglary. Viewing the evidence in the light most favorable to the verdict, we find that appellant's confession, along with independent evidence showing that the charged crime of burglary of a habitation had been committed by someone, constitute sufficient evidence to support the jury's conviction. We overrule appellant's eighth point.

By point nine, appellant contends that the trial court erred in overruling his oral motion for continuance since appellant was awaiting the execution of a bench warrant for a material witness who would testify on his behalf. Appellant alleges that the material witness would have testified that appellant's confession was not given voluntarily and that this testimony could have influenced the jury's verdict.

Articles 29.03, 29.06, 29.08, and 29.13 of the Code of Criminal Procedure govern the procedures for continuance of a criminal action. Article 29.03 provides for continuance of a criminal action on the written motion of the State or of the defendant upon a showing of sufficient cause. TEX.CODE CRIM.PROC.ANN. art. 29.03 (Vernon 1989). Article 29.08 requires that a person having personal knowledge swear to the facts in the motion for continuance. TEX.CODE CRIM.PROC.ANN. art. 29.08 (Vernon 1989). In defendant's motion for continuance based on the absence of a witness, defendant must state:

1. the witness' name and residence, if known, or that the residence is unknown;

2. diligence was used to procure the witness' attendance (it is not sufficient diligence to have caused the issuance of a subpoena);

3. the material facts expected to be proved by the witness;

4. the witness is not absent by the procurement or consent of the defendant;

5. the motion is not made for delay; and

6. the witness' attendance cannot be secured during the present term of the court.

TEX.CODE CRIM.PROC.ANN. art. 29.06 (Vernon 1989).

A motion for continuance is a matter left to the sound discretion of the trial court. TEX. CODE CRIM.PROC.ANN. art. 29.06 (Vernon 1989). In *Hightower v. State*, 629 S.W.2d 920, 926 (Tex.Crim.App.1981), the court held there was no abuse of discretion to refuse an oral motion for continuance. *See also Gonzales v. State*, 470 S.W.2d 700, 701 (Tex.Crim.App.1971) (the trial court did not abuse its discretion when it denied a motion for continuance that was oral, was not sworn, and did not meet the other requirements of article 29.06). The trial court's refusal to grant a verbal motion for continuance, whether made before or after trial commenced, is not ground for reversal. *Stubbs v. State*, 457 S.W.2d 563, 564 (Tex.Crim.App.1970).

To preserve error and challenge a trial court's refusal of a motion for continuance made because of an absent witness, appellant must file a sworn motion for new trial, stating the testimony he expected to present by the witness. *Varela v. State*, 561 S.W.2d 186, 191 (Tex.Crim.App.1978); *Flores v. State*, 789 S.W.2d 694, 698–99 (Tex.App.—Houston [1st Dist.] 1990, no pet.). A showing under oath by means of an affidavit of the missing witness or some other source as to what that witness would testify must accompany the motion for new trial. *Benoit v. State*, 561 S.W.2d 810, 817 (Tex.Crim.App.1977); *Cox v. State*, 644 S.W.2d 26, 30 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd).

■ Appellant filed an application for a bench warrant for Andres Hernandez on June 23, 1992, the day of the trial, and the court issued the warrant on the same day. At the conclusion of the State's evidence, appellant's counsel orally moved for a continuance on the basis that the warrant had not been executed yet and that Hernandez was material to the defense's case. The trial court denied appellant's motion. Appellant filed a motion for new trial accompanied by trial counsel's affidavit. The affidavit did not state what evidence or testimony Hernandez would present. The trial court did not abuse its discretion in denying appellant's oral, unsworn motion for continuance. Moreover, because appellant's motion for new trial did not comply with the requirements, appellant did not preserve error. We overrule appellant's ninth point of error.

By point ten, appellant contends that he received ineffective assistance of counsel because his trial counsel failed to object to the introduction of extraneous offenses at trial.

■ In all criminal proceedings, a person is entitled to the assistance of counsel. U.S. CONST. amend. VI and TEX. CONST. art. I, § 10. Appellant, in order to show he was denied effective assistance of counsel, must show that counsel's performance was so deficient that it failed to meet an objective standard of reasonableness under prevailing professional norms, and that that failure deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). However, the constitutional right to counsel does not mean errorless counsel or counsel judged ineffective by hindsight. *Ex parte Carillo*, 687 S.W.2d 320, 324 (Tex.Crim.App.1985).

■ Appellant must also show that, but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Counsel's adequacy will be gauged by the totality of the representation. *Carillo*, 687 S.W.2d at 324. In evaluating counsel's performance and strategic choices, it is difficult to do so from hindsight. Therefore, he is strongly presumed to have rendered adequate assistance. *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex.Crim.App.1991) (per curiam).

Appellant cites to numerous instances in which trial counsel failed to object to the State's questions regarding evidence of 1) a possible drug transaction occurring at appellant's house and 2) other burglaries that appellant may have committed or confessed to having committed. The record shows that

trial counsel did object to the admission of appellant's second confession, containing a list of addresses of houses he admitted to burglarizing, since it was evidence of extraneous offenses. The trial court overruled counsel's objection. Furthermore, the record shows that although trial counsel did not object to the State's questions, counsel addressed these issues in his cross-examination of the State's witnesses. Such a tactic is a strategic choice. Appellant also complains that his trial counsel did not object to a witness' testimony that bruises on appellant's arms were consistent with drug addicts who shoot up drugs. However, defense counsel, himself, elicited testimony that appellant had shot up heroin the morning of his confession. Part of defense counsel's strategy was to demonstrate that appellant was under the influence of heroin, and therefore, could not have confessed voluntarily. Again, counsel's failure to object may be attributed to defensive strategy. Hence, we find that appellant was not denied effective assistance of counsel. We overrule appellant's tenth point of error.

Accordingly, we affirm the judgment of the trial court.